RAFAEL M. GONZALEZ, JR.
UNITED STATES ATTORNEY
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
ROSALEEN O'GARA, ARIZONA STATE BAR NO. 029512
NICOLE LOCKHART, TEXAS STATE BAR NO. 24089271
TRIAL ATTORNEYS
CRIMINAL DIVISION, U.S. DEPARTMENT OF JUSTICE
1301 NEW YORK AVE., 10TH FLOOR
WASHINGTON, D.C. 20530
TELEPHONE: (202) 514-1412

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| Plaintiff, | **RULE 11 PLEA AGREEMENT** |
| vs. | |
| NICHOLAS JONES, | |
| Defendant. | |

Rev. March 2022

I.      **GUILTY PLEA**

A.      **Summary of Terms.**  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Counts One and Two of the Information, which charges the Defendant with wire fraud and making a false entry in a federal campaign record, respectively. The Defendant also agrees to admit to the forfeiture allegations in the Information.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement.  Upon acceptance of the Defendant's guilty pleas, and the Defendant's full compliance with the other terms of this agreement, the Government will, under Federal Rule of Criminal Procedure 11(c)(1)(A), not to initiate any further criminal charges against the Defendant arising from the investigation in this case, and under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") guidelines range as determined by the Court.

B.      **Oath.**  The Defendant will be placed under oath at the plea hearing.  The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

C.      **Waiver of Indictment.**  The Defendant hereby waives the right to prosecution by indictment, pursuant to Federal Rule of Criminal Procedure 7(b), and agrees to plead guilty to the Information as detailed herein.

II.     **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The Defendant waives the following rights by pleading guilty pursuant to this Agreement: 1) the right to plead not guilty to the offense(s) charged against the Defendant and to persist in

---

[1]     The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho and the Public Integrity Section, Criminal Division of the Department of Justice.

that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant.  If the Court accepts the Defendant's guilty pleas, there will be no trial.

III.    **NATURE OF THE CHARGES**

A.    **Elements of the Crime.**  The elements of the crime of wire fraud, in violation of 18 U.S.C § 1343, as charged in Count One, are as follows:

1.    First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2.    Second, the statements made, or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3.    Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

4.    Fourth, the defendant used, or caused to be used, the interstate wires to carry out or attempt to carry out an essential part of the scheme.

The elements of making a false entry in a record, in violation of 18 U.S.C § 1519, as charged in Count Two, are as follows:

1.    First, the defendant made a false entry in a record, document, or tangible object;

**Plea Agreement**                    2                    Rev. March 2022

Case 1:22-cr-00104-DCN   Document 2   Filed 05/10/22   Page 4 of 20

2.      Second, that the defendant did so knowingly; and

3.      Third, the defendant intended to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of the United States.

B.      **Factual Basis.**  The Defendant admits the following facts are true:

The Defendant, a resident of Boise, Idaho, was a small business owner, with an ownership interest in numerous companies, including Company A, Company B, and Company C described in the Information.  In 2020, he took advantage of federally-funded COVID-relief programs for personal gain.  Specifically, the Defendant improperly obtained and improperly spent loan proceeds from two programs:  (i) the Paycheck Protection Program ("PPP"), which responded to the economic fallout of the COVID-19 pandemic by giving forgivable loans to small businesses for job retention and certain other expenses, and (ii) the Economic Injury Disaster Loan ("EIDL") program, which was a Small Business Administration ("SBA") program that provided low-interest financing to small businesses affected by the pandemic.  PPP loans were taxpayer-funded but processed and disbursed through private banks.  EIDL loans were processed and disbursed directly from the SBA.

In addition, in 2020, the Defendant ran as a candidate for the U.S. House of Representatives.  He used PPP loan proceeds for campaign expenditures and did not properly disclose the resulting campaign contributions.

***With respect to Count One,*** beginning in or about April 2020, and continuing through in or about July 2020, within the District of Idaho and elsewhere, the Defendant, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud banks and the SBA as to material matters, and to obtain money and property owned by and in the custody and control of the banks and the SBA by means of material false and

**Plea Agreement**                 3                Rev. March 2022

fraudulent pretenses, representations, and promises, and the concealment of material facts. The Defendant admits to engaging in this scheme through three separate false applications.

On or about April 4, 2020, the Defendant submitted an application to Bank A on behalf of Company A for a PPP loan. The Defendant certified in the PPP loan application that he, as an authorized representative of Company A, understood the terms and rules of the PPP loan program, which provided that PPP loan proceeds were to be used by the recipient to pay only certain authorized business expenses, such as payroll, mortgage interest, lease, and utilities.

On or about April 8, 2020, the Defendant signed the "Business Loan Agreement and Borrower's Certification." In so doing, the Defendant agreed to the term that: "Use of all Loan proceeds solely for (a) retain workers and maintain payroll and/or (b) make mortgage interest payments, lease payments, and utility payments, and for no other purpose(s) whatsoever. The Borrower understands that if the funds are knowingly used for unauthorized purposes, the federal government may hold the undersigned legally liable, such as charges for fraud."

On or about April 16, 2020, as a result of the application, PPP loan proceeds of $85,800 were deposited from an account controlled by Bank A to Company A's bank account controlled by the Defendant. These loan proceeds were deposited through an interstate wire transfer of funds. Instead of using PPP loan proceeds for their stated and authorized business purposes consistent with PPP rules, the Defendant knowingly misapplied and used a portion of the PPP loan proceeds for his own personal benefit, including, among other things, to make a personal mortgage payment, pay for a political advertisement, and make a car payment.

The Defendant also obtained two other loans from federally-funded COVID-relief programs for entities that Jones controlled: (i) an EIDL loan in the amount of $499,900 for Company B , and (ii) an EIDL loan in the amount of $149,900 for Company C. The Defendant admits that he misused those loan proceeds as well, applying them for his personal benefit, rather

than their stated and authorized business purposes consistent with EIDL rules, including to pay for, among other things, stock purchases, make personal mortgage payments, and make life insurance payments. The Defendant admits that his conduct with respect to these loans was part of his wire fraud scheme charged in Count One and is relevant conduct because he misused these loan proceeds.

With respect to the scheme charged in Count One, the Defendant made material misrepresentations that he would comply with the PPP and EIDL loan terms and conditions. In executing this scheme to improperly obtain and spend COVID-relief funds, the Defendant acted with the intent to defraud.

***With respect to Count Two,*** in March 2020, Jones declared his candidacy for Idaho's First Congressional District. On March 25, 2020, the Defendant formally registered "Jones for Congress LLC" as a business with the Secretary of State in Idaho. On or about May 8, 2020, the Defendant electronically filed with the FEC a Statement of Candidacy, declaring "Jones for Congress LLC" as the principal campaign committee for his campaign, seeking election to District 1 in the State of Idaho for the U.S. House of Representatives. The Defendant established a campaign headquarters and advertised his candidacy for the U.S. House of Representatives in media and online.

On March 19, 2020, the Defendant called a meeting with certain Company B employees in Boise, Idaho. At the meeting, the Defendant informed employees, who had expressed concern about cut hours and wages in light of the COVID-19 pandemic, that he would try to continue to pay them despite the pandemic and would provide opportunities for them to work. One opportunity that the Defendant told employees would be available to them would be work on the Defendant's congressional campaign.

Between March 19, 2020, and June 1, 2020, numerous Company B employees reported to work on behalf of the Defendant's congressional campaign in exchange for receiving their wages.

The employees logged hours using the same timekeeping system they used when working shifts at Company B, but instead of doing Company B work, the employees were required to make calls from the Defendant's campaign headquarters to voters in support of the Defendant's congressional campaign. The employees worked for Company B, but were paid thousands of dollars' worth of wages for their work through funds of Company C—the same company through which the Defendant applied for and obtained the $85,800 PPP loan discussed previously. Between March and June, 2020, the employees who worked for the campaign took home more than $20,000 in wages. The employees were paid, at least in part, for their work on the Defendant's congressional campaign using funds that the Defendant had obtained from the $85,800 PPP loan. The Defendant knew that he was not permitted to use funds received from the PPP loan, intended for employee wages, to pay individuals working for his congressional campaign.

On June 2, 2020, the Defendant lost his bid for the First Congressional District in Idaho.

The Federal Election Commission ("FEC") was an agency of the United States Government with jurisdiction to enforce the limits and prohibitions of the Federal Election Campaign Act, as amended Title 52, United States Code, Sections 30101, *et seq* ("The Election Act") and to compile and publicly report accurate information about the source and amounts of contributions to candidates for federal office, including candidates running for U.S. House of Representatives. The Election Act required committees to file campaign finance reports accurately disclosing activity related to contributions, expenditures, debts, and loans of the committee.

On July 13, 2020, after losing in the primary election on June 2, 2020, the Defendant caused his campaign committee to file a campaign finance report with the FEC, disclosing the campaigns activity related to contributions, expenditures, debts, and loans of the committee for

**Plea Agreement**                              6                              Rev. March 2022

the period April 1, 2020 through June 30, 2020.  In the report, no in-kind contributions from any entity or individual other than the Defendant, including Company B employees, were reported to the FEC.  The Defendant was listed as the sole source of all in-kind contributions to the Defendant's campaign.  The Defendant well knew and contemplated that his employees had, in fact, made thousands of dollars' worth of in-kind contributions to his campaign in the form of employee time and work, but the Defendant knowingly concealed, falsified, and made to be filed a false entry in the campaign report to the FEC.

## IV.    SENTENCING FACTORS

A.    **Penalties.**  The crime of wire fraud, as charged in Count One, is punishable by:

    1.    a term of imprisonment of up to 20 years;

    2.    a term of supervised release of not more than 3 years;

    3.    a maximum fine of $250,000, and a special assessment of $100.

The crime of making a false entry in a record, as charged in Count Two, is punishable by:

    1.    a term of imprisonment of up to 20 years;

    2.    a term of supervised release of not more than 3 years;

    3.    a maximum fine of $250,000, and a special assessment of $100.

B.    **Supervised Release.**  The Court may impose a period of supervised release.  No agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the Defendant is pleading guilty.  Violation of any condition of supervised release may result in further penalties and prosecution.

C.    **Fines and Costs.**  The Court may impose a fine.  No agreement exists as to its amount.  The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

D.     **Special Assessment.**  The Defendant will pay the special assessment(s) before

sentencing and will furnish a receipt at sentencing.  Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724

E.     **Restitution.**  In addition to paying any fine and costs imposed, the Defendant also

agrees to pay, and be ordered to pay, restitution in the following amount to the following victim:

> Check amount:   $90,564.84 (with notation "Court Ordered Restitution" for SBA Loan
> No. 8015517004 )

> Payable to:      SBA/DFC
> 721 19th St.
> 3rd Floor, Room 301
> Denver, CO  80202

The Defendant agrees that all monetary penalties imposed by the Court, including

restitution, will be due immediately and can immediately be enforced by the Government

(whether through 18 U.S.C. § 3613 or otherwise).   The Defendant agrees that the payment

schedule or plan is neither the only method, nor a limitation on the methods, available for

enforcing the judgment.  It is simply a schedule or plan for minimum payments.   The Defendant

is aware that voluntary payment of restitution prior to adjudication of guilt is a factor the Court

can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

F.     **Forfeiture.**  The Court will enter a forfeiture order as part of the Defendant's

sentence. The Defendant will immediately forfeit to the Government the property constituting the

proceeds of the PPP loan described above in this Agreement.  Defendant agrees that the

Information provides statutory authority for forfeiture.

1.     Accordingly, the Defendant agrees to forfeit the following.

a.     Forfeiture Money Judgment for Unrecovered Property.  The Court

may impose forfeiture of a monetary sum, or money judgment, equivalent to unrecovered

**Plea Agreement**                         8                         Rev. March 2022

property including unrecovered proceeds of the PPP loan obtained through the offense of

conviction obtained and controlled by the Defendant, property derived from or traceable to such

proceeds, and/or unrecovered property the Defendant used to commit or facilitate the offense, as

authorized by applicable statutes.   The Defendant agrees to a forfeiture judgment of at least

$90,564.84.

                    b.        Substitute Assets Up To the Value of Unrecovered Property Subject

to Forfeiture. Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the Defendant agrees

to forfeit substitute assets, or any other property of the Defendant up to the value of any

unrecovered property subject to forfeiture.  Post-sentencing forfeiture of substitute assets does not

entitle the Defendant to resentencing.

                2.       The Defendant makes the following additional agreements and waivers

related to forfeiture.

                    a.        Regarding the above property, the Defendant:  (a) is the sole owner,

unless otherwise set out herein; (b) hereby withdraws any claims filed in any administrative or

civil forfeiture proceeding; (c) agrees to assist fully in the forfeiture and to take all steps necessary

to pass clear title to the Government; (d) will testify truthfully in any forfeiture proceeding and

will not assist a third party in asserting a claim; (e) agrees to administrative or civil forfeiture, or

abandonment, if the Government does not pursue criminal forfeiture; and (f) agrees that variations

or errors in serial numbers or property descriptions shall not affect forfeiture.

                    b.        Forfeiture is separate from all other penalties, including fines and

restitution.  As with other penalties, the Court will determine forfeiture at sentencing.  Any stated

or pleaded forfeiture amount is an "at least" amount and the Court may impose greater or

additional forfeitures.  The Defendant waives requirements regarding notice and pronouncement

**Plea Agreement**                         9                               Rev. March 2022

of forfeiture, including: (a) in charging documents, (b) at the change of plea hearing, (c) at sentencing, and (d) in the judgment. *See* Fed. R. Crim. P. 11(b)(1)(J), 32.2, and 43(a).

           c.       The Defendant waives all challenges and objections, on any grounds, to any forfeiture in accordance with this agreement. If this agreement is withdrawn for any reason, the Defendant waives the right to contest all administrative and civil forfeitures that began before the withdrawal. The Defendant agrees to hold the United States, its agents, and employees harmless from any claims related to seizures or forfeiture in this case or the related investigation. The forfeiture provisions of this agreement will survive the Defendant's death and bind the Defendant's heirs, successors and assigns until forfeiture is fully collected. Any forfeited property directed to victims shall not be returned even if the Defendant's conviction is overturned or abated.

           d.       The District Court shall retain jurisdiction to consider and rule on forfeiture and related issues unless a higher Court directs otherwise.

           3.       If the Defendant pays the forfeiture money judgment amount prior to sentencing, the Court at sentencing orders both forfeiture of that amount and restitution, and the Defendant does not have recourse reasonably available to other assets from which to satisfy his restitution obligation, the Government agrees that upon final forfeiture of the funds it will seek authority from the Department of Justice Money Laundering and Asset Recovery Section ("MLARS") Section for "restoration," which is the application of forfeited funds to satisfy the criminal restitution judgment imposed by the Court in this case. The Defendant understands that this is a discretionary function of MLARS, which must be exercised consistent with applicable regulations, and that the Government cannot promise or guarantee a particular result. With that limitation in mind, the Government agrees that it will submit to MLARS a request for restoration

if the Defendant makes the described payment. The payment must be made to the United States Marshals Service. The Government will provide payment instructions at the Defendant's request.

**V.      CIVIL AND ADMINISTRATIVE REMEDIES**

The Defendant understands and agrees that the SBA, the U.S. Department of the Treasury, or the Civil Division of the United States Attorney's for the District of Idaho may pursue civil and/or administrative remedies against the Defendant, including costs and penalties, in connection with the loans that the Defendant received as part of the scheme investigated and prosecuted in this case, including (i) SBA Loan No. 53151284-02 for a PPP loan for Sehon Family Holdings LLC, (ii) EIDL Loan No. 68700579-03 for Chow Public Market and Eatery LLC, and (iii) EIDL Loan No. 33179172-05 for Good Burger II LLC. The Defendant understands and agrees that any civil and/or administrative actions brought by the SBA, the U.S. Department of the Treasury, or the Civil Division of the United States Attorney's for the District of Idaho do not affect, reduce, or alter in any way his obligations under this Agreement. The Defendant understands and agrees that the Government may share the results and investigative materials from this investigation and prosecution with the SBA, the U.S. Department of the Treasury, and/or the Civil Division of the United States Attorney's for the District of Idaho.

**VI.     UNITED STATES SENTENCING GUIDELINES**

A.      **Application of Sentencing Guidelines.** The Court must consider the sentencing guidelines in determining an appropriate sentence under 18 U.S.C. § 3553. The Defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G § 1B1.3.

The Court is not a party to this Agreement and the agreement does not bind the Court's determination of the sentencing guidelines range. The Court will identify the factors that will

determine that range under the U.S.S.G.  The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that this agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

B.     **Sentencing Guidelines Recommendations and Requests.**

1.     **Government's Statements at Sentencing.**  The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation.  The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information.   Any exception must be specified in this agreement.

2.     **Loss Amount.**  The parties agree that that the loss amount in this case for purposes of the U.S.S.G. calculation is $735,600.

3.     **No Sophisticated Means.**  The Government agrees that the two-level enhancement under U.S.S.G. § 2B1.1(b)(10) does not apply.

4.     **Not Ten or More Victims.**  The Government agrees that the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) for an offense involving 10 or more victims does not apply.

5.     **Acceptance of Responsibility.**  If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level under USSG § 3E1.1(a).  The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial

and permitting the Court to allocate its resources efficiently.  If, before sentence is imposed, the Defendant fails to meet USSG § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

6.     **Downward Departure or Variance Request by Defendant.**  The Defendant intends to seek a downward departure under U.S.S.G. § 5H1.3.  If the Defendant wishes to seek a departure or variance on other grounds, the Defendant must provide written notice to the Government, along with the reasons and basis therefore, 21 days before the date set for sentencing.

## VII.   WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A.     <u>**Waiver.**</u>  In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack plea, conviction, judgment, and sentence, including forfeiture and restitution.  This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea(s), conviction, or sentence in this case.  Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

B.     <u>**Exceptions.**</u>

1.     **Direct Appeal.**  Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

a.   the sentence imposed by the Court exceeds the statutory maximum;

b.   the Court arrived at an advisory sentencing guidelines range by applying an upward departure under chapter 5K of the relevant sentencing guidelines manual; or

c.   the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory sentencing guidelines range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2.   **Motion Under 28 U.S.C. § 2255.**  Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government.  Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it.  Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.  Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX.   DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has any financial interest.  This includes all community property.  The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government.  The Defendant agrees truthfully to

complete a personal financial statement within 14 days from the date the Defendant signs this agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later.  The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances.  The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government:  (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit.  If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X.    NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing.  The Defendant cannot withdraw from this agreement or either guilty plea, regardless of the Court's actions.

## XI.    CONSEQUENCES OF VIOLATING AGREEMENT

A.    **Government's Options.**  If the Defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation:  1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice.  If the Government determines that a breach

**Plea Agreement**                                      15                                      Rev. March 2022

warrants prosecution before sentencing, it may withdraw from this agreement in its entirety.  In addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea(s) made pursuant to this Agreement.

B.      **Defendant's Waiver of Rights.**  If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement.  In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up:  (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare.  The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII.    MISCELLANEOUS

A.      **No Other Terms.**  This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant.  This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the Defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does

not bind or obligate governmental entities other than that specified as the Government in this

agreement (*i.e.*, the United States Attorney's Office for the District of Idaho and the Public

Integrity Section, Criminal Division of the Department of Justice).

B.    **Plea Agreement Acceptance Deadline.**  This plea offer is explicitly conditioned

on the Defendant's notification of acceptance of this agreement no later than 5:00 p.m. on April

28, 2022.

## XIII.   UNITED STATES' APPROVAL

I have reviewed this matter and the agreement.  This agreement constitutes a formal plea

offer from the Government.  Any oral discussions with the Defendant and defense counsel about a

plea do not constitute a plea offer.  Any written offer or agreement made before this agreement is

no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States

that the terms and conditions set forth above are appropriate and are in the best interests of justice.

RAFAEL M. GONZALEZ, JR.
UNITED STATES ATTORNEY
By:

_____          _____5/9/22_____
JOSHUA D. HURWIT                  Date
Assistant United States Attorney


COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
By:

_____          _____5/9/2022_____
NICOLE R. LOCKHART                Date
ROSALEEN T. O'GARA
Trial Attorneys, Public Integrity Section

## XIV.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney, and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney or Trial Attorney, concerning the pleas to be entered in this case. I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____          05/9/2022
NICHOLAS JONES                            Date
Defendant

I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement. I have conveyed all written offers from the Government to the Defendant pursuant to *Missouri v. Frye*, 132 S. 566 U.S. 134, 144-47 (2012). I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a

**Plea Agreement**                18                          Rev. March 2022

citizen or naturalized citizen of the United States. It is virtually certain that my client will be removed from the United States. By virtue of pleading guilty in this case I concur in my client's decision to plead guilty as set forth above.

_____          ___5/9/2022_____
MIKE FRENCH                                Date
Attorney for the Defendant

**Plea Agreement**                    19                    Rev. March 2022